UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JIMMY L. SESSIONS,

                              Plaintiff,                    08-CV-0724-A

                                                                   **DECISION**
                       v.                              **and ORDER**

MICHAEL J. ASTRUE, Commissioner
of Social Security

                              Defendant.

---

## INTRODUCTION

Plaintiff Jimmy L. Sessions ("Plaintiff") commenced the instant action on September 26, 2008, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of the final determination of the defendant Michael J. Astrue, the Commissioner of Social Security (the "Commissioner"), disallowing plaintiff's claim for Supplemental Security Income ("SSI") benefits under the Social Security Act. The Commissioner moved for judgment on the pleadings pursuant to Rule 12(c)) of the Federal Rules of Civil Procedure on May 19, 2009. On June 26, 2009, plaintiff moved for an extension of time to file additional medical reports. The Commissioner filed a response memorandum opposing plaintiff's motion on July 28, 2009.

For the reasons set forth below, the Court finds that plaintiff is not entitled to benefits because substantial evidence in the record demonstrates that he is not disabled within the meaning of the Social Security Act. Therefore, the Commissioner's decision is affirmed. The Court also denies plaintiff's motion for an extension of time to

file additional medical reports because he has not shown that even if his motion was granted the additional evidence would require remand in this case.

## **BACKGROUND**

Plaintiff protectively filed an application for SSI benefits on June 29, 2005. (Tr. 81).[1] In his application, plaintiff stated that he was unable to work as of February 1, 2002, due to arthritis of the neck, anxiety, panic, depression, and mental illness. (Tr. 89). Plaintiff was forty-six years old at the time of his application. (See Tr. 81). Plaintiff indicated that the eighth grade was the highest grade he completed in school, and when questioned during the hearing, plaintiff indicated that he had primarily been placed in special education classes. (Tr. 93; 327). Plaintiff's past relevant work included positions as a garbage collector from 1991 to 1992, a dishwasher in a restaurant from 1989 to 1999, and a janitor in 2002. (Tr. 95-98; see also Tr. 327-29).

Plaintiff's application for benefits was denied on October 13, 2005. (Tr. 31-33). On December 17, 2005, plaintiff filed a Disability Report-Appeal, in which he stated that because of injuries he sustained in an automobile accident on March 14, 2005, he was no longer able to "lift heavy weights or maintain a steady work pace." (Tr. 112). Pursuant to plaintiff's request, hearings before an Administrative Law Judge ("ALJ") were scheduled for May 16, 2006 and July 5, 2006. (Tr. 310-13; 314-20). Both hearings were adjourned in order to allow plaintiff time to obtain legal representation. Id. Once plaintiff obtained counsel, he again appeared before the ALJ on September 5,

---

[1] Page citations are to the transcript of the administrative record filed by the Commissioner as part of his answer.

2

2006 for a hearing. (Tr. 321-56). During the hearing, testimony was provided by plaintiff and a vocational expert. (Tr. 322). In a decision dated February 2, 2007, the ALJ found that although plaintiff suffered from left knee disorder, degenerative cervical disc disease, herniated cervical and lumbar discs, cervical spine sprain, lumbar spine sprain, and alcohol and drug abuse, he was not disabled within the meaning of the Social Security Act, and therefore was not entitled to receive SSI benefits. (Tr. 12-25). On March 30, 2007, plaintiff requested that the Appeals Council review the ALJ's decision. (Tr. 8-11). The Appeals Council denied plaintiff's request for review on July 25, 2008, and therefore, the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7). Plaintiff then filed this *pro se* action seeking review of the ALJ's determination.

## DISCUSSION

### I. Jurisdiction and Scope of Review

Pursuant to 42 U.S.C. § 405(g), district courts have jurisdiction to hear claims based on the denial of Social Security benefits. On review, the district court may set aside the decision of the Commissioner "only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla," and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v.

3

Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

### II. The Disability Standard

In order to qualify for Supplemental Security Income benefits, a claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The claimant's impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." Id. § 1382c(a)(3)(B). The claimant must also satisfy the income and resource criteria as set forth in 42 U.S.C. §§ 1382, 1382a, and 1382b.

The following five-step sequential evaluation process is used to determine whether a claimant is disabled under the Social Security Act:

> 1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
>
> 2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
>
> 3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

> 4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
>
> 5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps.

Shaw, 221 F.3d at 132; see also 20 C.F.R. § 416.920.

### III. The Commissioner's Decision to Deny Plaintiff's Application for Benefits is Supported by Substantial Evidence in the Record.

Plaintiff's complaint does not raise any specific challenges to the Commissioner's decision. The only identifiable issue that plaintiff appears to have is mentioned in his statement accompanying his motion for extension of time to file medical reports. In his statement, plaintiff argues that to support a determination that there is other work that he can do, the Commissioner would need to find an employer who has an opening for him and would actually be willing to hire him for full-time work considering his need to "watch out for his back." Because plaintiff is proceeding *pro se* and has not clearly articulated his reasons for challenging the Commissioner's determination, this Court will review the Commissioner's decision sequentially and address plaintiff's sole argument at step five of the analysis.

Beginning with step one of the sequential analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity as of his alleged onset date. (Tr. 17). At step two, the ALJ concluded that plaintiff's impairments were severe. Id.

At step three however, the ALJ concluded that plaintiff's impairments did not meet or equal any of the impairments listed in Appendix 1 of the regulations. (Tr. 17-18).

The ALJ then assessed plaintiff's residual functional capacity ("RFC") for application to steps four and five of the sequential analysis. An individual's RFC, is "the most [he] can do despite [his] limitations." 20 C.F.R. § 416.945. For the period from plaintiff's alleged onset date through September 2005, the ALJ found that plaintiff was unable to work due to mental limitations which prevented him from relating to others and dealing with stress. (Tr. 23). However, the ALJ determined that plaintiff was not entitled to benefits for that period because plaintiff's drug addiction and alcoholism were material to his disability. (Tr. 24).

Where drug addiction or alcoholism is a "contributing factor material to the Commissioner's determination that the individual is disabled," the claimant is not entitled to disability benefits. 42 U.S.C. § 1382c(a)(3)(J); see also 20 C.F.R. § 416.935. The "key factor" considered is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1). If the physical and mental limitations remaining in the absence of drug or alcohol use are not found disabling, then the claimant's drug addiction or alcoholism will be deemed to be a contributing factor material to the disability determination. Id. § 416.935(b)(2). The claimant bears the burden of proving that drug addiction or alcoholism was not a contributing factor material to the disability determination. Frankhauser v. Barnhart, 403 F.Supp. 2d 261, 273 (W.D.N.Y. 2005); White v. Comm'r of Soc. Sec., 302 F.Supp. 2d 170, 173 (W.D.N.Y. 2004) (citing Brueggemann v. Barnhart, 348 F.3d 689, 693 (8th Cir. 2003);

6

Ball v. Massanari, 254 F.3d 817, 821 (9th Cir. 2001); Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001)).

The record demonstrates that plaintiff consistently abused drugs and alcohol through September 2005. In January 2005, plaintiff was admitted to Alcohol and Drug Dependency Services, Inc. in order to undergo treatment for his drug and alcohol addictions and mental health concerns. (Tr. 181). Plaintiff was discharged a short time later on February 17, 2005. Id. Plaintiff's discharge summary indicated that he had not made any progress, continued to use drugs and alcohol, and was resistant to a mental health referral. (Tr. 182). The agency reported that his discharge was an unsuccessful one due to his loss of contact with the agency. Id. Additionally, during a psychiatric evaluation conducted by Dr. Thomas Ryan on September 13, 2005, plaintiff indicated that he was drinking "as much as I can get." (Tr. 193). In his notes, Dr. Ryan indicated that it was apparent that plaintiff was drinking daily and also using marijuana. Id.

The record also supports a finding that plaintiff's active drug and alcohol abuse was material to his disability from his alleged onset date through September 2005. During plaintiff's psychiatric evaluation with Dr. Ryan, plaintiff reported symptoms of insomnia, depression, irritability, and hallucinations, and also appeared psychotic and paranoid. (Tr. 192). Dr. Ryan opined that plaintiff's reported symptoms could be related to his alcohol or drug dependence. (Tr. 193).

In his mental status examination notes, Dr. Ryan stated that plaintiff was uncooperative, his thought processes were often irrelevant, his affect was inappropriate, his mood was irritable, his orientation was poor, his attention,

7

concentration, and memory skills were impaired, and his cognitive functioning was below average. (Tr. 193-94). Dr. Ryan concluded that although plaintiff could understand and follow simple directions, his attention difficulties, inability to deal with stress, and inability to relate well with others, would prevent him from maintaining a regular schedule. (Tr. 194). Dr. Ryan diagnosed plaintiff with psychotic disorder, NOS (not otherwise specified), alcohol abuse, and cannabis abuse. (Tr. 195).

Dr. Madan Mohan, a state agency review physician, reviewed plaintiff's records on October 7, 2005. (Tr. 203). Dr. Mohan opined that plaintiff could perform simple work-related activities, but stated that he would have difficulty with concentration, relating with others, and dealing with stress. (Tr. 219). Dr. Mohan concluded that plaintiff's continued abuse of alcohol and drugs was material to his functional limitations. Id.

As noted by the ALJ, the record contains no evidence after September 2005 suggesting that plaintiff continued to experience mental health problems. (Tr. 24). The ALJ pointed out the fact that plaintiff never sought mental health treatment after his unsuccessful drug and alcohol treatment in early 2005. (Tr. 23-24). Furthermore, the ALJ noted that the record does not contain any evidence that the plaintiff continued to abuse drugs and alcohol after September 2005. (Tr. 24). Indeed, during the administrative hearing, plaintiff indicated that he had not used drugs in 1 ½ to 2 years and only drank occasionally. (TR. 334-35). When asked about his mental limitations during the administrative hearing, plaintiff only stated that he is "a little slow," but provided no other complaints regarding his mental health. (Tr. 346). Therefore, the ALJ's determination that plaintiff's drug and alcohol abuse was material is well

8

supported because there is no evidence suggesting that plaintiff's mental limitations continued to be disabling after he stopped abusing drugs and alcohol. Furthermore, plaintiff, although represented by counsel during the administrative hearing, did not provide any evidence to demonstrate that his drug and alcohol abuse was not material to the finding that he was disabled between his onset date and September 2005.

For the period from September 2005 to the date of the hearing, the ALJ determined that plaintiff retained the RFC to do simple, repetitive work, with a lifting limit of five pounds, and no repetitive flexion or extension movements of the cervical or lumbar spine or knees. (Tr. 18).

The ALJ's RFC determination is well supported by the evidence contained in plaintiff's medical records. Starting in May 2005, plaintiff began seeing Dr. Anthony M. Avellanosa for treatment of his neck, back, and knee pain. During plaintiff's first visit with Dr. Avellanosa on May 12, 2005, Dr. Avellanosa noted that plaintiff did not use any assistive devices, was able to approach the examination table normally, and exhibited a normal equilibrium. (Tr. 153). During plaintiff's initial and follow up visits, Dr. Avellanosa reported that plaintiff could squat fully and walk normally on his heels and toes. (Tr. 153; 155; 286; 294; 297; 299). Throughout plaintiff's visits, Dr. Avellanosa also reported that plaintiff's motor system examinations were normal/intact, with no signs of muscle weakness, paralysis, or atrophy. (See Tr. 153; 156; 286; 294; 297; 299). Furthermore, plaintiff's sensory system examinations were consistently normal/intact. Id. As to plaintiff's limitations, Dr. Avellanosa consistently opined that plaintiff should avoid repeated flexion and extension movements of his lumbar and

9

cervical spine or knees, and should not lift more than 5 pounds. (See Tr. 154; 156; 286; 294; 297; 299).

Plaintiff was seen one time by a consultative examiner, Dr. Christine Holland, who reported similar findings. Dr. Holland reported that plaintiff could walk normally on his heels and toes, could half-squat, had a normal stance, and did not use assistive devices or need assistance with movement on or off of the examination table. (Tr. 197). Dr. Holland also found that plaintiff had full range of motion in all of his extremities, with hand and finger dexterity intact. (Tr. 198). With regard to plaintiff's limitations, Dr. Holland opined that plaintiff was mildly to moderately limited in his ability to do heavy lifting, twisting, and stair climbing. (Tr. 199).

In assessing plaintiff's RFC, the ALJ gave great weight to Dr. Avellanosa's opinions regarding plaintiff's limitations, noting that he consistently treated plaintiff since May 2005 and objective signs in the record supported his opinions. (Tr. 23). Given the length of Dr. Avellanosa's treatment of plaintiff, his specialization in neurology, and the lack of any other substantial evidence in the record inconsistent with his findings, the ALJ's determination to give great weight to Dr. Avellanosa's RFC assessment was well supported. See 20 C.F.R. § 416.927(d).[2] The ALJ gave lesser weight to Dr. Holland's RFC assessment because she only saw plaintiff once. (Tr. 23). The ALJ gave no weight to the opinion of Dr. Horace M. Rosteing, noting that he did not provide an RFC

---

[2] Where a treating source's opinion regarding the "nature and severity" of a claimant's impairments "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," the opinion is to be given controlling weight. 20 C.F.R. § 416.927. Here, the ALJ did not specifically state that he was giving "controlling weight" to Dr. Avellanosa's opinions regarding plaintiff's limitations. However, it appears that the ALJ actually did accord controlling weight to Dr. Avellanosa's assessment, as his opinions regarding plaintiff's specific physical limitations were fully incorporated into the ALJ's RFC determination.

assessment when asked to and had referred plaintiff to Dr. Avellanosa for treatment. (Tr. 23). As also noted by the ALJ, Dr. Rosteing's treatment notes were "generally unremarkable." (Tr. 19).

The ALJ gave little weight to the statements made by both Dr. Avellanosa and Dr. Rosteing that plaintiff was "totally disabled." (See Tr. 23; see also Tr. 154; 156; 261; 286; 294; 297; 299 (physician's statements)). The ALJ correctly stated that the disability determination is reserved to the Commissioner. See 20 C.F.R. § 416.927(e). As stated in the regulations, "[a] statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that you are disabled." Id. § 416.927(e)(1); see also Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003); SSR 96-5p. Furthermore, the physicians' statements that plaintiff was "totally disabled" do not find support in the objective medical findings contained in the record.

In addition to considering the objective medical evidence and medical opinions, the ALJ also considered plaintiff's subjective complaints regarding his pain and limitations in accordance with the regulations. See 20 C.F.R. § 416.929. Consistent with the regulations, the ALJ considered all of the evidence available in the record, including plaintiff's own statements, his treatment history, medication usage, and activities of daily living. See id. § 416.929(c)). The ALJ also properly considered the credibility of plaintiff's complaints because, "[i]n general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements." SSR 96-7p. When making a credibility determination, the ALJ "must

consider the entire case record and give specific reasons for the weight given to the individual's statements." Id.

Upon reviewing the record, the ALJ concluded that plaintiff's complaints regarding his pain and limitations were not wholly credible or consistent with his daily activities. (Tr. 23). Plaintiff's complaints were not consistent with the treatment notes from his visit with Dr. Avellanosa on May 11, 2006, where plaintiff reported that the medication Flexeril was "helpful" and the medication Ultracet controlled his pain "effectively." (Tr. 296). The ALJ also found plaintiff's complaint that his medications make him blurry-eyed and light headed inconsistent with his activities of daily living, which include driving at least two times per day. (Tr. 23; see also 326-27; 330; 333-34; 345; 346 (plaintiff's testimony)). Furthermore, plaintiff testified that he took care of his grandson some days, shopped at the corner store alone, and would also take his wife shopping. (Tr. 333-34). As also noted by the ALJ, plaintiff's testimony regarding his extensive medication usage was not consistent with the prescription printout provided to the ALJ. (See Tr. 22; 145-51; 341-44).

Assessing the credibility of the claimant is a function of the Commissioner and not the reviewing court. Aponte v. Sec'y of Dep't of Health & Humans Servs., 728 F.2d 588, 591 (2d Cir. 1984). Thus, an ALJ's credibility determination as to plaintiff's subjective complaints must be upheld if it is supported by substantial evidence. Id. Here, the ALJ's determination that plaintiff's complaints regarding his symptoms and limitations were not credible was well supported.

The ALJ additionally considered plaintiff's mental limitations when assessing plaintiff's RFC, as required by the regulations. 20 C.F.R. § 416.945(c)). As

12

stated above, the ALJ noted that during the hearing, plaintiff stated only that he was "a little slow" to remember things, but did not complain about any other mental limitations. (Tr. 23; 346). Furthermore, the ALJ noted that the record did not contain evidence of any mental health complaints or treatment after the plaintiff stopped abusing drugs and alcohol. (Tr. 24). However, considering plaintiff's limited eighth grade education and special education placement, the ALJ determined that plaintiff should be limited to "simple repetitive work." (Tr. 24).

Viewing the record as a whole, substantial evidence supported the ALJ's determination that plaintiff retained the RFC to do simple, repetitive work with a five pound lifting limitation, and no repetitive flexion or extension of the cervical or lumbar spine or knees. (Tr. 18). Applying her RFC findings at step four, the ALJ concluded that plaintiff was unable to do his past work which required medium to very heavy exertion. (Tr. 24). The ALJ's step four determination is supported by the vocational expert's testimony during the administrative hearing that an individual with plaintiff's RFC would not be able to perform plaintiff's past work. (Tr. 351-52).

After assessing plaintiff's RFC and determining that plaintiff could not perform his past work, the ALJ determined at step five that there were other jobs that plaintiff could perform. (Tr. 24). Upon finding that a claimant cannot return to his past work, the burden shifts to the Commissioner to "show there is other gainful work in the national economy which the claimant could perform." Butts v. Barnhart, 388 F.3d 377, 383 (2d Cir. 2004), *amended in part on reh'g by* 416 F.3d 101 (2d Cir. 2005) (internal quotation marks and alterations omitted) (quoting Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). Generally, the Commissioner can meet his burden at step five by

basing his determination on the Medical Vocational Guidelines ("Grids"). Id. However, such reliance is only appropriate if the Grids take into account "the full extent of a claimant's physical limitations." Id. (quoting Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999)). If a claimant's "exertional impairments are compounded by significant nonexertional impairments that limit the range of sedentary work that the claimant can perform . . . the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform." Id. (quoting Rosa, 168 F.3d at 78).

Here, the ALJ determined that plaintiff's limitations restricted his ability to perform the full range of sedentary work, and therefore properly concluded that the Grids should not be relied on in determining whether plaintiff could do other work. (See Tr. 25). The ALJ instead elicited testimony from a vocational expert during the administrative hearing, and relied on that testimony in reaching her ultimate conclusion that there were other jobs plaintiff could perform. During the hearing, the vocational expert testified that there were three jobs consisting of light or sedentary work that could be performed by someone of plaintiff's age, education, and past work experience, who is limited to lifting no more than five pounds and cannot engage in repetitive flexion or extension movements of the cervical or lumbar spine or the knees. (Tr. 351-53). The first job identified was a ticket seller, which is a light and unskilled job with approximately 410 jobs regionally and 65,000 jobs nationally. (Tr. 352). That job would require standing for the entire day. Id. The second job identified was a dowel inspector, which is a sedentary and unskilled job with approximately 175 jobs in the region and 37,000 jobs nationally. Id. This job could be performed primarily sitting

down.  Id.  The third job identified was a final assembler in the eyeglasses industry, which is a sedentary and unskilled job with approximately 400 jobs regionally and 75,000 jobs nationally.  (Tr. 353).  This job would involve light lifting.  Id.  The vocational expert also testified that such jobs could be performed by an individual limited to simple, repetitive work.

Taking into account plaintiff's testimony regarding his limitations at the hearing, the ALJ also asked the vocational expert if an individual who required use of a cane, could only walk 1 ½ blocks at a time, stand for 45 minutes at a time, sit for 45 minutes at a time, bend 20 degrees, kneel for 30 to 40 minutes, occasionally lift five pounds, lift and carry, but not stoop or climb stairs, could perform the three jobs discussed.  (Tr. 353; see also Tr. 337-40(plaintiff's testimony)).  The vocational expert stated that with such limitations, an individual would not be able to perform the ticket seller job because it would require standing, but he could do the inspector or assembler jobs because he would be able to alternate between sitting and standing.  (Tr. 353).

As stated above, plaintiff appears to argue in his papers that in order to sustain his burden, the Commissioner must find an employer who has an opening for him and would actually be willing to hire him for full-time work considering his need to "watch out for his back."  When determining that there is other work a claimant can perform, the only question for the Commissioner is whether such work exists in the national economy.  See 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.966.  Work is considered to exist in the national economy if it "exists in significant numbers either in the region where such individual lives or in several regions of the country."  42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 416.966(a).  In determining that work exists in the

national economy, it does not matter "whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B); see also 20 C.F.R. § 416.966(a).

Here, the vocational expert demonstrated that the ticket seller, dowel inspector, and final assembler jobs exist in significant numbers in both the region and the nation. Because the testimony of the vocational expert established that there were other jobs that plaintiff could perform given his age, education, past work experience, and RFC, the Commissioner's burden was satisfied, and the ALJ's conclusion that plaintiff was not disabled was well supported.

### IV. Plaintiff's Motion for Extension of Time to Submit Medical Reports is Denied

Plaintiff seeks to file additional evidence in the form of medical reports for consideration in his case. According to plaintiff, the medical reports reflect additional testing and ongoing treatment for his neck and back pain. Where additional evidence is presented in an SSI case, the district court may remand the case to the Commissioner for further proceedings "only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g).

The Second Circuit has explained the three-part showing that claimants must satisfy as follows. First, the claimant must show that the evidence is new, and not simply cumulative of the evidence already contained in the record. Lisa v. Sec'y of

Dep't of Health & Human Servs., 940 F.2d 40, 43 (2d Cir. 1991). Second, the claimant must show that the evidence is material, "that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative." Id. (quoting Tirado v. Bowen, 842 F.2d 595, 597 (2d Cir. 1988)). To be material, the evidence must also create "a reasonable possibility that the new evidence would have influenced" the Commissioner to reach a different conclusion. Id. Third, plaintiff must demonstrate good cause for his failure to present the evidence at an earlier date. Id. Good cause exists where "the evidence surfaces after the [Commissioner's] final decision and the claimant could not have obtained the evidence during the pendency of that proceeding." Id. at 44.

Plaintiff has failed to demonstrate that the evidence contained in the additional medical reports would meet the above requirements in order to permit remand of his case. Plaintiff failed to provide any real indication of what the new reports would show, and to the extent that he has stated that the records reflect ongoing treatment and additional testing, it appears that the reports would merely be cumulative of those already reviewed by the ALJ. Furthermore, plaintiff has not demonstrated that the new reports would be material, because he has not alleged that the reports contain anything that would change the ALJ's determination.

Plaintiff's motion for extension of time to file medical reports is therefore denied because Plaintiff has not shown that even if his motion was granted the additional evidence would require remand.

**CONCLUSION**

For the reasons set forth above, the Court grants the Commissioner's motion for judgment on the pleadings and denies the plaintiff's motion for extension of time to file medical reports.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 8, 2010